**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **OLAYINKA AIKENS,** | § | |
| | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | **Civil Action No. 3:19-cv-69** |
| **v.** | § | **ECF** |
| | § | |
| **CEDAR HILL INDEPENDENT** | § | |
| **SCHOOL DISTRICT,** | § | |
| | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

NOW COMES Plaintiff Olayinka Aikens and files this, her Original Complaint and Jury Demand, and respectfully shows the following:

**I.**
**PARTIES**

1.  Plaintiff Olayinka Aikens ("Plaintiff" or "Aikens") is an individual who resides in Dallas County, Texas.

2.  Defendant, Cedar Hill Independent School District ("Defendant," "CHISD," or the "District"), is a local governmental unit or municipality located in Dallas County, Texas. Defendant may be served with process through its superintendent, Dr. Billy Snow, at 285 Uptown Blvd., Building 300, Cedar Hill, Texas 75104.

## II.
## JURISDICTION AND VENUE

3. This Court has original jurisdiction to hear this complaint under 28 U.S.C. § 1331 because this case asserts claims for violations of 42 U.S.C. § 1981 *et seq*.

4. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367, as these claims being so related to the claims in the action within this Court's original jurisdiction that they form part of the same case or controversy.

5. Personal jurisdiction over Defendant is appropriate because Defendant operates its business in the State of Texas. Further, an exercise of jurisdiction will not offend traditional notions of fair play and substantial justice.

6. Venue is proper in this district because the acts giving rise to this lawsuit occurred within Dallas County, Texas in the Northern District of Texas.

## III.
## FACTS

7. Ms. Aikens first started working for CHISD in or about August 2016 as a middle school teacher and a coach of multiple athletic sports, including basketball, track, cheerleading, and volleyball.

8. Ms. Aikens gave her best efforts to the District, its students, and its community.

9. Indeed, Ms. Aikens envisioned a long and fruitful career with the District.

10. Ms. Aikens is African American and is over 40-years old.

11. Unfortunately, Ms. Aikens was treated differently than similarly situated employees.

12. Specifically, following false accusations of contact with a student in early December 2017, the District placed Ms. Aikens on disciplinary leave, reported her to the Texas Education Agency (TEA) and Child Protective Services (CPS), and denied her a contract renewal.

13. Importantly, and ultimately, both the TEA and the CPS ultimately cleared Ms. Aikens of any wrongdoing.

14. In December 2017, Violet Dean, then-Executive Director of Human Resources, informed Ms. Aikens in writing that she must resign on her own or else she would be terminated at the end of her contract.

15. Ms. Aikens rightfully refused to resign voluntarily because she had done nothing wrong.

16. Furthermore, Ms. Aikens was not given any opportunity to defend herself or give explanations.

17. In fact, the school's then-Principal Avesgus Tetterton demanded that she change and falsify her own truthful statement following her incident with the student.

18. From that moment on, the District began harassing Ms. Aikens.

19. For example, after placing Ms. Aikens on leave, the District still required her to come in everyday in the morning to sign in, leave, and then come back at 5 P.M to sign out.

20. In another instance, the District even called the police on Ms. Aikens for simply asking questions about a meeting she was told to attend.

21. On January 4, 2018, Ms. Aikens received a letter from the CPS "ruling out" any wrongdoing on her part with regard to the report CHISD made.

22. On or about February 23, 2018, Ms. Aikens sent a certified letter to Mr. Tetterton, the superintendent Mr. Snow, and the District's Board of Trustees, informing them of the alleged incidents and Mr. Tetterton's handling of the matter and forcing her to change her truthful statements.

23. Last year, the District placed five individuals on leave until the end of the school year, all African American.

24. However, when similarly situated employees had similar allegations against them, the District did not treat them in the same manner as Ms. Aikens.

25. Indeed, these employees remain employed by the District.

26. For example, when a Caucasian teacher had pushed another student, that teacher was only put on leave briefly and then ultimately returned to work a few days later.

27. In another instance, an athletic coach got into a physical altercation with a student but did not receive any type of reprimand or punishment.

28. Moreover, Melanie Goodin (white teacher) assaulted a student in classroom, pulled a girl's hair and kicked and punched her.

29. Ms. Goodin was allowed to stay at the district for an additional two years until she left on her own.

30. Marlena Mints and Steven Lemley are more examples of white teachers given preferential treatment over African American teachers.

31. Another much younger teacher (Kourtney Coleman) was blasted on social media for grabbing a kindergarten student by the arm and leaving physical bruises with her fake nails.

32. Ms. Coleman was never reprimanded or reported to the TEA, and she remains employed by the District.

33. The District terminated Ms. Aikens' contract for allegedly violating its Code of Ethics.

34. However, that Code is not applied equally among the District's employees.

35. Ms. Aikens' contract would have been renewed like any other Caucasian or young teacher had it not been for the race and age discrimination the District engaged in.

36. On or about April 6, 2018, Ms. Aikens received a letter from Violet Dean stating the District was going to recommend Ms. Aikens' contract termination at the end of her term.

37. On April 9, 2018. Ms. Aikens received a letter from Michael Quildon, CHISD School Board President, indicating that the Cedar Hill ISD Board of Trustees voted not to renew her contract for the 2018/2019 school year.

38. On April 11, 2018, Ms. Aikens received a letter from the TEA, indicating that the circumstances surrounding the investigation were deemed not to warrant further action by the Education Certification and Standards Division, and that the case was closed, and no additional action was being taken.

**IV.**
**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

39. Plaintiff timely filed a charge of discrimination against Defendant with the Equal Opportunity Commission (EEOC) and the Texas Workforce Commission (TWC). Plaintiff files this complaint within 60 days after receiving a notice of right to sue from the TWC.

40. All conditions precedent to the bringing of this suit have been satisfied or fulfilled.

**V.**
**RACE DISCRIMINATION IN VIOLATION OF**
**42 U.S.C. § 1981 ET SEQ., THE KU KLUX KLAN ACT**

41. Plaintiff incorporates the preceding paragraphs as if fully stated herein.

42. As described above, Defendant's actions constitute unlawful discrimination on the basis of Plaintiff's race in violation of 42 U.S.C. § 1981.

43. The employment practices complained of above were intentional.

44. Plaintiff has satisfied all jurisdictional prerequisites in connection with her claims under Section 1981.

45. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and expects to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with her employment.

46. As a result of Defendant's unlawful discrimination, Plaintiff has harms and damages including but not limited to emotional pain, suffering, inconvenience, personal humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages.

47. Defendant acted at all relevant times with malice and/or reckless indifference to Plaintiff's federally-protected rights. Plaintiff therefore seeks punitive damages.

48. Additionally, Plaintiff seeks any and all equitable relief necessary to return her to the position that she would have been in but for Defendant's unlawful discrimination.

49. Defendant's actions referenced above have caused Plaintiff to retain the services of the undersigned counsel in order to pursue her federal rights in this action. Consequently, Plaintiff seeks attorneys' fees, expert costs, and other costs of suit under 42 U.S.C. § 1981.

## VI.
## TEXAS LABOR CODE RACE AND AGE DISCRIMINATION

50. Plaintiff incorporates the preceding paragraphs as if fully stated herein.

51. Plaintiff is an employee under § 21.002 of the Texas Labor Code.

52. Defendant is an employer under § 21.002 of the Texas Labor Code.

53. Plaintiff was an African American employee of Defendant.

54. Plaintiff is over 40-years old.

55. Defendant violated the Texas Labor Code when it placed Plaintiff on leave and refused to renew her contract because of her race and age.

56. Defendant's actions as stated above were conducted with either a specific intent to cause injury to Plaintiff and/or with a conscious indifference to the rights, safety, or welfare of others.

57. Defendant's practices as alleged above were committed with malice.

**VII.**
**JURY DEMAND**

58. Plaintiff hereby makes a demand for a trial by jury on all issues, claims and defenses in this action.

**VIII.**
**PRAYER**

59. For these reasons, Plaintiff respectfully requests that the above-named Defendant be cited to appear in this matter and that, after jury trial by proof, she be awarded:

    i. Back pay, including but not limited to, lost wages (salary and commissions) and other employment benefits;

    ii. Reinstatement to Plaintiff's position of employment, equivalent position of employment, or the position of employment Plaintiff would have enjoyed but for the discrimination and retaliation;

    iii. In the event that reinstatement is not feasible, front pay with respect to all pay and benefits Plaintiff would have received but for the termination;

    iv. Judgment against Defendant for compensatory damages including emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life;

    v. Actual damages;

vi. Judgment against Defendant for Plaintiff's reasonable attorneys' and experts' fees; and costs of suit; and

vii. Prejudgment and post-judgment interest as allowed by law;

viii. Such other and further legal and/or equitable relief to which Plaintiff may be justly entitled.

Respectfully submitted,

By: ___/s/ Fadi Yousef_____
Fadi Yousef
Texas Bar No. 24108025
fyousef@robwiley.com

Robert J. Wiley
Texas Bar No. 24013750
*Board Certified Specialist, Texas Board of Legal Specialization, Labor and Employment Law*

LAW OFFICE OF ROB WILEY, P.C.
2613 Thomas Ave.
Dallas, TX 75204
Phone: (214) 528-6500
Fax: (214) 528-6511

**ATTORNEYS FOR PLAINTIFF**